# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2019

No. 18-30786

Lyle W. Cayce
Clerk

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

　　　　Requesting Parties - Appellants

v.

CLAIMANT ID 100126024,

　　　　Objecting Party - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-4977

Before STEWART, Chief Judge, and DAVIS and ELROD, Circuit Judges.

PER CURIAM:*

In this appeal, the BP-appellants[1] challenge the claimant's Business
Economic Loss award under the Deepwater Horizon Economic and Property
Damages Settlement Agreement ("Settlement Agreement"). Claimant-
appellee Burkhalter Rigging, Inc. ("Burkhalter") is a provider of heavy rigging,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

[1] We refer to appellants BP Exploration & Production, Inc., BP America Production
Company, and BP, P.L.C. collectively as "BP."

No. 18-30786

heavy lifting, and multi-modal transportation services with its headquarters in Columbus, Mississippi. Burkhalter filed a claim under the Settlement Agreement for business losses following the Deepwater Horizon disaster. BP challenges the claimant's award on two grounds: (1) claimant should have been excluded from the settlement class under the Oil and Gas Industry Exclusion; and (2) the calculation of claimant's compensation should have excluded revenues and expenses derived from its two sales offices outside the Gulf Coast Areas. The district court denied BP's request for discretionary review. As discussed below, we conclude that the district court did not abuse its discretion. We therefore AFFIRM.

## I. History of Burkhalter's Claim

Burkhalter filed its claim in November 2012. In Burkhalter's claim form, it provided the NAICS code 238900 for its business.[2] Burkhalter's 2010 federal income tax return listed the same code for its business activity.

Burkhalter's claim form stated that it had one- or two-person sales offices in Murfreesboro, Tennessee and Houston, Texas during the months of May to December 2010. Burkhalter denied that these locations met "the definition of 'Facility' as found in Exhibit 5 of the settlement agreement [because Burkhalter] did not and does not 'perform or manage its operations' at any location other than . . . Columbus, Mississippi."

The Court Supervised Settlement Program ("Program") requested additional information from the claimant about the nature of its business and

---

[2] "'NAICS' is an initialism for 'North American Industry Classification System.' NAICS consists of numeric codes that federal statistical agencies use to classify business establishments in order to collect, analyze, and publish data related to the U.S. economy." *Claimant ID 100153748 v. BP Expl. & Prod., Inc.*, 708 F. App'x 812, 815 n.1 (5th Cir. 2017) (per curiam) (citation omitted). While our unpublished opinions are not controlling precedent, they may be persuasive authority. *See Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006) (citation omitted). The United States Department of Labor's Bureau of Labor Statistics website defines code 238900 as "Other Specialty Trade Contractors."

No. 18-30786

its various office locations.  In response, the claimant stated that it offered rigging, lifting, and transport services; it did not have any other Facilities where it performed or managed its operations in 2010; its most recent Houston office opened in 2013; and its most recent sales offices opened in 2014 (Mobile, Alabama) and 2016 (San Francisco, California).  The Program also requested and obtained supporting documentation for revenues during the months of May to November in 2009, 2010, and 2011, which included the names of some of Burkhalter's customers.

On August 2, 2017, the Claims Administrator issued an Eligibility Notice stating that the claimant was eligible for an award of approximately $9 million.[3]  The Program noted the existence of multiple office locations when it reviewed the claimant's website, but the claimant's counsel's responses to the Program's inquiries apparently satisfied the Program that the claimant did not have any office locations constituting "Facilities" in 2010, other than its headquarters in Columbus.  The Program's calculation notes did not discuss its determination of the claimant's appropriate NAICS code.

On August 22, 2017, BP appealed the award to an administrative appeal panel.  BP challenged the Program's classification of the claimant under the NAICS code 238990 (All Other Specialty Trade Contractors) and argued that the claimant's proper NAICS code was 237120 (Oil and Gas Pipeline and Related Structures Construction).  BP argued that the customers listed in the claimant's revenue documentation showed that its primary business was providing specialty construction services to the oil and gas industry.  BP further argued that the claimant's provision of incomplete information to the

---

[3] The Benchmark (pre-spill) and Compensation (post-spill) Periods for Burkhalter's claim were May to November 2009 and 2010, respectively.

Program about its sales offices outside the Gulf Coast Areas prevented the Program from fully evaluating whether those offices constituted "Facilities."

In response, the claimant submitted an affidavit from its CEO stating:

> I have reviewed [Burkhalter]'s financial documents. Approximately 90% of [Burkhalter]'s revenues in 2009 and 2010 were for clients unrelated to the oil and gas industry. These clients were primarily in the industrial and manufacturing industries. . . . [Burkhalter] did not, does not, and cannot identify its revenues and job-related expenses associated with any sales office (including the sales offices in Murfreesboro, Tennessee and Houston, Texas) separately from the Columbus, MS office.

On February 26, 2018, the administrative appeal panel issued its decision, which upheld the award to Burkhalter. The appeal panel noted that the exclusion issue turned on the claimant's proper NAICS code, which was based on its primary business activity. It referenced the parties' citations to the claimant's website, the portion of the claimant's work (based on the revenue documentation in the record) associated with customers in the oil and gas industry, and the claimant's CEO's affidavit. The appeal panel then stated that its "*de novo* review of the record shows that, while Claimant is certainly a specialty trade contractor, there's no support for BP's contention that Claimant [sic] activities are 'primarily related to oil and gas pipeline and related structures construction.'" The panel upheld the Program's code assignment.

As to the facilities issue, the appeal panel cited the claimant's arguments that it disclosed the sales offices' existence and that the Program inquired about those offices and found that they did not constitute "Facilities." The panel also referenced the CEO's affidavit. The panel concluded: "A *de novo* review of the record does not support BP's contention, nor does this Panel find it necessary to remand this matter for further inquiry."

No. 18-30786

BP requested discretionary review by the federal district court supervising the Program, which the district court denied.  BP timely filed this appeal challenging that judgment.

## II.  Standard of Review

This court reviews the district court's denial of discretionary review for abuse of discretion.[4]  "We generally assess whether the district court abused its discretion by looking to 'whether the decision not reviewed by the district court actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement.'"[5] Also, "[i]t may be an abuse of discretion to deny a request for review that raises a recurring issue on which the Appeal Panels are split if 'the resolution of the question will substantially impact the administration of the Agreement.'"[6]

"However, we have been careful to note that it is 'wrong to suggest that the district court must grant review of *all* claims that raise a question about the proper interpretation of the Settlement Agreement.'"[7]  "It is not an abuse of discretion to deny a request for review that 'involve[s] no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise[s] the correctness of a discretionary administrative decision in the facts of a single claimant's case.'"[8]

We have recently stated that the "'clear purpose of the Settlement Agreement [is] to curtail litigation' and, as a practical matter, these claims

---

[4] *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017) (per curiam) (citation omitted).

[5] *Id.* (quoting *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016)).

[6] *Id.* (quoting *In re Deepwater Horizon*, 632 F. App'x 199, 203-04 (5th Cir. 2015) (per curiam)).

[7] *Id.* (citation omitted) (quoting *Holmes Motors*, 829 F.3d at 316).

[8] *Id.* (alterations in original) (quoting *In re Deepwater Horizon*, 641 F. App'x 405, 410 (5th Cir. 2016) (per curiam)).

No. 18-30786

must be handled by the settlement process.  In the absence of a blatant violation of or disregard for the Settlement Agreement, a third review of an award is inappropriate."[9]

### III. Analysis

BP argues that the district court abused its discretion in denying review of the appeal panel's decision.  For the reasons that follow, we conclude that the district court did not abuse its discretion in denying review.

### i. Oil and Gas Industry Exclusion

The Settlement Agreement excludes certain types of individuals and entities from the settlement class, including Oil and Gas Industry entities identified in the NAICS codes listed on Settlement Agreement Exhibit 17.[10] Exhibit 17 lists NAICS code 237120, "Oil and Gas Pipeline and Related Structures Construction," which includes "establishments primarily engaged in the construction [including new work, reconstruction, rehabilitation, and repairs] of oil and gas lines, mains, refineries, and storage tanks."[11]  The code definition states further that "[s]pecialty trade contractors are included in this group if they are engaged in activities primarily related to oil and gas pipeline and related structures construction."[12]

The Settlement Agreement instructs the Program's Claims Administrator to determine an entity's NAICS code by reviewing: (1) "the NAICS code shown on a Business Entity claimant's 2010 tax return," (2) "2010 business permits or license(s), and/or" (3) "other evidence of the business's

---

[9] *BP Expl. & Prod., Inc. v. Claimant ID 100224371*, No. 18-30595, 2019 WL 1299925, at *3 (5th Cir. Mar. 12, 2019) (alteration in original) (quoting *Holmes Motors*, 829 F.3d at 317).

[10] Economic and Property Damages Settlement Agreement, Section 2.2.4.5, http://www.deepwaterhorizoneconomicsettlement.com/docs/Amended_Settlement_Agreement_5.2.12_optimized.pdf#search [hereinafter Settlement Agreement].

[11] *Id.* at Oil & Gas Industry Exclusions (Exhibit 17).

[12] *Id.*

activities necessary for the Claims Administrator to determine the appropriate NAICS code."[13]  Burkhalter's 2010 tax return listed its business activity code number as 238900, a non-excluded code.[14]

Claims Administrator's Approved Policy 480, which governs the determination of an entity's NAICS code, provides: "The appropriate NAICS Code for an Entity shall be the NAICS Code that most accurately describes the Entity's primary business activities, which are the activities in which the Entity was primarily engaged during the operative Benchmark, Compensation, and Class Periods."[15]  The policy adds that the NAICS code used on an entity's 2010 tax return or business license is not conclusive.[16]

We have held that "the determination of the appropriate NAICS code for a single entity claimant is not the type of 'pressing question' that warrants district court review" but is rather "precisely the type of discretionary factual determination that . . . the district court need not review."[17]

This issue does not involve any misapplication or contradiction of the Settlement Agreement, nor does it involve any pressing question of how the Settlement Agreement should be interpreted or implemented.  Rather, it

---

[13] *Id.*; *see also id.* at Section 4.4.7.1.

[14] Burkhalter's tax returns before the spill, in 2007, 2008, and 2009, listed the same code number.

[15] *Claims Administrator's Approved Policy 480 v2: Determination of NAICS Code of an Entity*, DEEPWATER HORIZON CLAIMS CENTER: ECONOMIC & PROPERTY DAMAGE CLAIMS (2014), https://www2.deepwaterhorizoneconomicsettlement.com/un-secure/pkpolicysearch. aspx (search Policy ID field for "480" and click "Create PDF"); *Final Policy, Policy 480 v.2: Determination of NAICS Code of an Entity,* https://www2.deepwaterhorizoneconomicsettle ment.com/un-secure/pkpolicysearch.aspx (search Policy ID field for "480" and click "View") [hereinafter *Policy 480*].  The Settlement Agreement defines "Class Period" as "April 20, 2010 until the date of the filing of the Action, which is April 16, 2012."  Settlement Agreement, *supra* note 10, at Section 38.28.

[16] *Policy 480, supra* note 15, at 3.

[17] *Claimant ID 100153748*, 708 F. App'x at 819 (citations omitted); *see also BP Expl. & Prod., Inc. v. Claimant ID 100217946*, 919 F.3d 258, 264 (5th Cir. 2019) (per curiam) (noting that the district court does not abuse its discretion by deferring to the Claims Administrator's discretionary administrative decisions).

involves only the correctness of a discretionary factual determination (as to Burkhalter's NAICS code) that the district court need not review.

This is particularly true in this case, given the record evidence. In addition to Burkhalter's tax return, the Program also reviewed Burkhalter's website, questioned it about the nature of its business, and requested revenue documentation that included information about some of Burkhalter's customers.[18] The appeal panel conducted a de novo review of the record and considered the affidavit from Burkhalter's CEO. Based on this information, the Claims Administrator and appeal panel had a reasonable basis to find that Burkhalter was not primarily engaged in oil and gas industry activities and was properly assigned a non-excluded NAICS code.

Because of the record developed by the Claims Administrator, the district court was not required to remand this claim to obtain more information about the claimant's customers.[19] Accordingly, we find that the district court did not abuse its discretion by denying review of this issue.[20]

### ii. Facilities Outside the Gulf Coast Areas

Under the Settlement Agreement, a multi-facility business headquartered within the Gulf Coast Areas may recover payment for losses suffered by its facilities within the Gulf Coast Areas, but not those outside the

---

[18] The parties have not provided evidence of any 2010 business permits or licenses.

[19] *See BP Expl. & Prod., Inc. v. Claimant ID 100204031*, No. 18-30586, 2019 WL 1281203, at \*2 (5th Cir. Mar. 18, 2019) (per curiam) ("Even if more information could have been obtained . . . , we see nothing arising from the level of scrutiny given to th[is] issue to require the district court's discretionary review.").

[20] BP has not argued that this issue has split the administrative appeal panels.

No. 18-30786

Gulf Coast Areas.[21] A "Facility" is "[a] separate and distinct physical location of a Multi-Facility Business at which it performs or manages its operations."[22]

To find that a remote business location is a "Facility," Policy 467 requires that the location be:

(a)     A separate and distinct physical structure or premises;
(b)     Owned, leased or operated by the Business Entity;
(c)     At which the Business Entity performs and/or manages its operations. [23]

The policy states as an "overall criterion" that "[a]n Entity does not 'perform' or 'manage' operations at a location unless it can identify the expenses and revenues, if any, associated with the operations at that location separately from the expenses and revenues of other locations owned, leased or operated by the Entity."[24]

BP argues that the Claims Administrator erred in finding that the sales offices were not "Facilities" and the district court, in turn, abused its discretion in failing to review this factual finding. We are satisfied that the appeal panel decision on this issue did not contradict or misapply the Settlement Agreement, nor did it involve any pressing question of how the Settlement Agreement should be interpreted or implemented.

---

[21] *See* Settlement Agreement, *supra* note 10, at Compensation for Multi-Facility Businesses (Exhibit 5). Under the Settlement Agreement, the Gulf Coast Areas are the states of Louisiana, Mississippi, and Alabama, and certain Texas and Florida counties. *Id.* at Section 38.80. The sales offices at issue are undisputedly outside the Gulf Coast Areas.

[22] *Id.* at Compensation for Multi-Facility Businesses (Exhibit 5).

[23] *Claims Administrator's Approved Policy 467: Economic Loss Claims: The Definition of "Facility,"* DEEPWATER HORIZON CLAIMS CENTER: ECONOMIC & PROPERTY DAMAGE CLAIMS (2014), https://www2.deepwaterhorizoneconomicsettlement.com/un-secure/pkpolicysearch .aspx (search Policy ID field for "467" and click "Create PDF"); *Final Policy, Policy 467: Economic Loss: The Definition of "Facility,"* https://www2.deepwaterhorizoneconomicsett lement.com/un-secure/pkpolicysearch.aspx (search Policy ID field for "467" and click "View") [hereinafter *Policy 467*]. "An entity 'performs' operations at a location if, in the normal course of its business, it has employees or agents who perform their work at that location and/or it provides services or products at that location." *Policy 467, supra*, at 5.

[24] *Id.*

No. 18-30786

The Claims Administrator and the appeal panel each considered the issue of whether the claimant's sales offices constituted "Facilities" under the Settlement Agreement.  The claim form informed the Program about the sales offices, and the Program reviewed the claimant's website and made multiple inquiries about these offices during its investigation before concluding that the claimant did not have any other "Facilities" in 2010.  The appeal panel also conducted a de novo review of the record, considered the claimant's CEO's affidavit, and upheld the Claims Administrator's determination.  We find plausible the CEO's assertion that Burkhalter could not identify the revenues and expenses associated with its sales offices separately from those associated with its headquarters.  BP does not explain how Burkhalter could determine the portion of a project's revenue that is attributable to the salesperson's efforts, separate from the efforts of the employees who supervised and performed the contracted-for work.  The parties have not presented evidence of an established accounting method for doing so.

The district court did not abuse its discretion by declining to require a remand for the Program to consider additional information about the sales offices.[25]  The court was entitled to defer to the Claims Administrator's and the appeal panel's judgment in making this factual determination[26] and did not abuse its discretion by denying review.[27]

---

[25] *See Claimant ID 100204031*, 2019 WL 1281203, at *2.

[26] *See BP Expl. & Prod., Inc. v. Claimant ID 100237661*, No. 18-30724, 2019 WL 1511007, at *3 (5th Cir. Apr. 5, 2019) (citation omitted); *Claimant ID 100217946*, 919 F.3d at 264.  This is also consistent with our recent unpublished, sealed opinion in *BP Expl. & Prod., Inc. v. Claimant ID 100214656*, No. 18-30887, slip op. at 3 (5th Cir. Apr. 16, 2019) (per curiam).

[27] BP has not argued that this issue has split the administrative appeal panels.

No. 18-30786

## IV. Conclusion

For these reasons, we conclude that the district court did not abuse its discretion by denying review of this claim. Accordingly, we AFFIRM the district court's judgment.